All rise. The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. You can be seated. Mr. Webb, whenever you're ready, we'll be glad to hear from you. May it please the Court, my name is Ken Webb. I'm an attorney at Bowles Rice in Charleston, West Virginia. I have the honor of representing John and Sandra Moore in a case that was pending in the Northern District of West Virginia concerning an easement. In that case, it's our view that Equitrans used a subsequent condemnation action to take property belonging to the Moores to excuse a trespass. We believe the district court's order should be reversed and vacated. That part of the order that allows for the subsequent condemnation because under the circumstances, Equitrans doesn't have any power under the Natural Gas Act to condemn property. The evidence in the case, we had an underlying case concerning the trespass in violation of the right-of-way. The evidence in the underlying case fundamentally was that Equitrans had an express grant, by express grant, a right-of-way that routed this pipeline across their property. Because Equitrans has, by express grant, a right-of-way across property, the Natural Gas Act, by its plain and unambiguous terms, does not empower Equitrans to condemn property where they moved their pipeline or relocated their pipeline in the 90s during maintenance operations. But do you say they don't have a public convenience and necessity certificate? They do have a certificate. So why don't they have the main power under that? If, your honor, they would not be able to agree with the landowner for a right-of-way. And isn't that what happened in this case? No, your honor. The predecessors to John and Sandy Moore, John's parents, granted to a predecessor, the Equitable Gas Company, to a predecessor of Equitrans a right-of-way, express grant. That right-of-way becomes completely unusable. Earthquake, hypothetical. Splits the earth at that point, unusable. And they condemn? They wouldn't have to, your honor. If you look at... No, no. And they condemn a new passage. I don't know. Under the express grant contained in the right-of-way agreement. Wait, no, wait. I want to understand your theory. Your theory is they have an express grant that's usable for their purpose. Absolutely. What if it disappears? That's my hypothetical. If it disappears, just go back now. If, Judge Floyd's question, could they then condemn a new route? I am not a FERC lawyer, but I would imagine that if, for some act of God's... Some reason they could go back to FERC, file a separate application to get a different route approved. So you think they could do it? Now you're talking about procedures. But you think they could use eminent domain to find a new route? If they could persuade FERC that they needed... The answer is yes or no. I'm not sure. I don't know. You can't say they couldn't. I can't. I know... Does it make sense to you they'd be able to? Under the act, if they need a new passage through that land, does it make perfect sense they'd be able to? Yes. So then is the question whether or not... Is the question then whether or not the route that they currently had was usable or unusable? Doesn't that take us right back to that question? I think that's a material issue. I think just in further answering your question... And so if it is, then your argument is what?  There's nothing wrong with their route. There's nothing wrong with the route that they acquired by Express Grant in 1959, 1960. What if it were? You have to answer hypothetically. I suppose. In that hypothetical context. Then if that's the case, why isn't that what... I'm just saying, I don't know whether you're going to win or lose in this, but why isn't that the factual scenario we have? There are no facts. There were no facts developed below that indicated that the right-of-way that was described by Express Grant and conveyed in the 1959-1960 right-of-way agreement was somehow unusable. Listen to me. We don't have to be loggerheads over this. I'm just asking you. What if it were the case that the route that the grant, the Express Grant gives, is for any reason, just accept it, is not usable? Then I think you said you certainly could not say to us they couldn't use them in a domain to get a new easement. Right. If for some reason they had to reroute the pipeline, then they would have to seek a different route, a different right-of-way. I think that would begin with the FERC process, getting approval from FERC. Are you saying what they've done, maybe they could do, but they just didn't use the right procedure? No. I'm saying, just to be precise, they didn't need to relocate the pipeline. Well, you know, I thought what happened in this case is that the pipeline was outside the right-of-way and they litigated over that, and the pipeline company lost, and so therefore they had a pipeline out there and they needed a piece of property. They tried to negotiate with you. You couldn't come to terms, and then they condemned it. Is that what happened? That is what happened. My argument to the district court argument here today is you don't have the power to condemn if you have a right-of-way. In the context of this case, Your Honor, they, for maintenance reasons, because it was easier to lay beside the existing pipeline, they didn't have to shut in the line, they didn't have to shut in the transportation of gas, for their sole convenience, instead of digging up the corroded sections of pipe and putting the new pipe in the same ditch along the right-of-way, they chose, without telling my clients, without giving my clients permission, Equitrans chose to lay beside the route, in some cases 25 or 30 feet away from the route, and in one part of the right-of-way, they moved pipeline off of an adjoiner onto us, so there was no right-of-way in that area. There is no justification for the relocation of the line. In other parts of the line, they replaced the corroded sections of the pipe in the same ditch. Didn't move it. Because the company needed to maintain pressure in the line for as long as possible and not shut it in because it was important to them to transport gas between the producers and the storage field, they made the decision in places to relocate the line. That constitutes trespass. We tried that case. The jury said, you don't have the right under your right-of-way agreement to maintain your pipeline in that fashion. Getting back to your question, Your Honor, if there's a slip in the land, if there's road construction that encroaches upon the right-of-way, they have a right to relocate it because that's not in their control. If it's something that's within their control, like maintenance activities, they don't have the right to relocate it. In this case, they relocated it in two places, moved it from where it was supposed to be on the Moore's property in one instance and moved pipeline that was on an adjoiner in another instance onto the Moore's property. Didn't tell us about it. Didn't ask for our permission. We challenged them on it. They denied that they had moved it. Made us litigate the issue. Under the law, was it possible to contract for the right they wanted? Absolutely. And how do you find what's possible? What if one side asks just astronomical numbers? This is just a question of understanding the law. Does that mean it can't be contracted for? Sure, you can contract for it. No, I'm asking what if one side goes, I want $300 billion, period. I understand the court's question. That's not what happened in this case. I didn't ask you that. I know what the facts of the case are. I'm just asking your understanding of when the easement of a right, can and cannot be contracted for. Can one side ask such an exorbitant number that it eliminates the possibility of a contract for the purposes of the law? Sure. You can come to loggerheads over price. This situation's a little different. In this situation, you have a pipeline that has been relocated without authority under the right-of-way agreement and constitutes a trespass and under West Virginia law gives the moors a right to eject. So you have an unusual circumstance. They're not asking in advance, hey, we'd like to relocate the line that's easier to maintain if we move it down the hill. They moved it.  Didn't get permission to do it. That has nothing to do with my question about contract, though. It's the price. What did your clients want for that land? Sure. What did your clients ask for? We asked for $600,000. Right. And how much did the jury say it was worth? Well, in the condemnation action, they awarded $5,000. Isn't that a determination of property value? It's not, in my view, Your Honor. No, but I'm talking about isn't that the law? It is a determination. I want to get this straight now. But a condemnation action tried to a jury, isn't that to set the price of the land being condemned? Yes, it is. If you agree that they have the right to condemn. If they don't have the right to condemn, which is our overarching action plan. I know you want to make your argument, but I'm asking questions to understand your argument. But a condemnation action is to decide the value of the property. And by the way, let me say this. Many, many homeowners absolutely disagree with the value that the jury assigns. I can understand that. I'm just trying to understand the interplay between what an exorbitant price, and I'm not saying that's what they ask you, but it seems pretty high, is what that does to the ability to contract. Because some of this law only kicks in if there is no ability to contract. I mean, the party certainly can come to loggerheads over price if they're trying to acquire an easement. And you think that means then the inability to contract is met under the statute if the property owner and the condemning authority can't agree to the debate? I don't believe that. I don't believe it's a relevant inquiry under the statute, under the Natural Gas Act, because they have a right over it. They have an agreement with the landowner. That's an entirely separate question from the question I'm asking you, though. I understand. Oh, if there were no pipeline, if they had come to the landowner initially and said we're routing a natural gas pipeline through this area, we've got a certificate of convenience and necessity, and we want an easement over your property, let's contract. And what if your client said we want $2 million? If you came to loggerheads over price, then you would go to condemnation. That's how typically what you would think. The only thing I'm trying to establish is you agree. It's not crystal clear to me, but I think that's right, that sometimes the inability to reach a price could mean the inability to contract. Sure. Okay. Absolutely. In this case, the overarching issue is when you have a right of way for this line and there's no reason you can't put the replaced line back in the right of way, under those unique facts and circumstances, do you have power under the Natural Gas Act to subsequently condemn the property you're trespassing? We say no. It violates the spirit of the letter and the spirit of the Natural Gas Act. Because you have a right of way, you've been able to contract. You don't have the power to condemn. It's then incumbent upon Equitrans to maintain and operate the line. The original pipeline wasn't big enough in diameter, and it was decided that the pipeline needed to be bigger, and the easement wouldn't physically support that. I'm not saying that's the fact of the statement. Or if the land form wouldn't support that, even though they had a right of way, could they still condemn for a second right of way? They would have to, Your Honor. As I understand the law of easements, because this particular express grant referred to a specific diameter of pipe, if they were to add multiple pipes or to change the diameter of the pipe, they would need a new right of way. And so you'd negotiate it. If you couldn't negotiate it, you'd condemn it. But even though they had a right of way, could they condemn to get a second right of way? If it was materially different than the first. Yes. Additional lines, extra lines, different location. Who decides when it's necessary for a second right of way? I presume that would be the company and FERC. They'd have to prove to FERC. Well, what if they said that they now believe that they need a new right of way because the old one is insufficient for any number of reasons. They suggest. Well, if you think they might get it, but you just think the process isn't right. I don't think. They can't make up any reason or give any reason to acquire, by condemnation, additional property. It has to be for public convenience and necessity. It can't be just for the purpose of necessity. Well, ultimately, initially by FERC and ultimately by the courts. You know, I think I've explained the basis of the natural gas issue. We tried the initial case. Equitrans defended by denying there was a trespass, made us try the case. We tried the case. They brought a compulsory counterclaim, amended their answer to bring a prescriptive easement claim. Never included a condemnation claim. Threatened to do it throughout. Only when we won the trial and proved a trespass, and proved violation of the right of way agreement, and we're trying to get a judgment order entered requiring ejectment, did they run to the court and obtain an order staying our action, and the court let them file the condemnation case. We think that's wrong. Doesn't comply with the Natural Gas Act. Additionally, we think it violates compulsory counterclaim rule under Rule 13. They should have filed their condemnation matter as a compulsory counterclaim in the first action. They say it wasn't mature. They didn't know. Their construction drawings from 1995 show them laying beside the pipeline. Their pipeline inspector, Henry Allen, who I deposed, who also testified at trial, knew because he supervised the construction. They knew or should have known of it. They should have brought it. They didn't. Judicial estoppel for a few seconds. They took a position in the first case. We are not trespassing. They took a position in the second case. Okay, we're not on the right of way. We're going to condemn. Shouldn't be allowed to play fast and loose with the facts. Did they win on the claim they're not trespassing? They got our motion for summary judgment. But don't you have to win on your position for judicial estoppel? The court has to accept it, Your Honor. There's some authority in our brief that in a motions practice it can be material. You have to win on it. I understand. They didn't win on that. I thought you won on the trespassing. Ultimately, we did. Finally, we have the whole constitutional issue. We contend that relocation of the line was done for a private purpose, their convenience, and was excessive because they have a right of way. There's nothing wrong with it. They can put the pipe back in it. For all of those reasons, we think the order ought to be reversed and vacated, and we ought to proceed with the ejectment action. Thank you. Mr. Webb, let me say, too, I push you in systems specifics, but you can rest assured that the panel, we've read your briefings, and we know the facts of the case. I don't want you to think we don't know, though. Thank you, Your Honor. Hendrickson. May it please the Court, my name is David Hendrickson. I'm an attorney from Charleston, West Virginia, along with Harry Meilenberg, representing Echo Trans in this matter. One fact that I've listened to your questions, obviously, that I think needs to play forefront in this thing is the relocation of the pipeline from its 1960 position to the 1994 position was done in 1994. The action for trespass was not brought until many, many years later. We're not sure, and no one was sure, whether or not the pipeline was ever laid in the correct right-of-way or was misplaced in 1994 when it was repaired because they found some pitting in the pipeline. Either way, we thought it was on the right-of-way on the initial action, and we also thought that if not, because of the passage of time. The juries found you trespassed, didn't they? Correct, Your Honor, they did. But we also thought that we might have an opportunity to have a perspective easement because of the fact that it had been so long since anything was raised in this case because it's been there for a long time. And let's point out another fact. This isn't in the middle of downtown somewhere. It's on top of a mountaintop in a pasture land. It's been used for pasture since 1960, and I think it still is today. It's buried. It was buried then. It's buried now. Still being used for pasture land. Nothing's interfering with the surface rights of these people using this property. Go ahead. I'm sorry. Where in the record did we find a copy of your Certificate of Public Convenience and Necessity? It was never contested, Your Honor, so we did not probably provide it. He's contesting it today. I don't think he is. Don't you think if he says your Certificate of Convenience and Necessity doesn't give you the right that you think you have? Well, that certificate was never contested. In the lower court, as a matter of fact, the judge in making his rulings assumed that it wasn't being contested and went forward. So we didn't supply it to this court. I don't think we can, but we do have that Certificate of Public Convenience and Necessity. Well, is it an ongoing certificate? Yes, it is, Your Honor. But you have an easement. Correct. You have an easement. Correct. You claim you have an easement. Correct. So why, how can you, what's the justification for a second relocation? Is it your argument that your easement covers this, or is it that you, I don't think that's your argument. Your argument isn't the easement you've always claimed to have covers where the new pipeline is. That's not your claim. That's not our claim. So what's your theory on why? Can you have as many easements as you think necessary through that property? Because under the national No, I said can you have as many easements as you think necessary through that property? Yes. You can? Yes. I think the Natural Gas Act, because the pipeline in question is H557 You get to decide if it's necessary. Perk. And I don't think this court has the power to do that. I don't think the court, a collateral attack through the court system is proper. Because FERC decided this new path, this new easement was necessary. When FERC gives us a certificate of public necessity and convenience, they give us the right to determine where the H557 pipeline should go. They give us the right to also maintain that pipeline and make any, and acquire any property necessary. You think that certificate allows you to take 300 paths through that property? No, I don't. I think it has to be a reasonable number, Your Honor. Decided by who? Well, I think it's decided by the certificate holder, which would be our company at this point in time. So in other words, you can take as many as you think necessary? Yes, Your Honor, to some degree, but I think it's got to You can and you can't, so which is it? Can you take as many as you think necessary? I believe so, yes, sir. Okay, I didn't know if I answered your question. You answered it. Okay. Thank you, Your Honor. So anyway, under the Natural Gas Act, it's the proper place for us to bring this action for condemnation. We thought we either had an easement or we had a prescriptive easement because of the passage of time. We didn't know at the time that they filed their complaint that we didn't have an easement. We thought we did. We thought we had a prescriptive easement. The jury told us we didn't, so we were wrong. Getting to his act on compulsory counterclaim, you thought your prescriptive easement covered the new path? Yes, Your Honor. Because the old pipeline wasn't really within the easement, isn't that correct? We don't know. At least that's their argument. We don't know. And they think that they won on that. Yes. But you have a new path, correct? Did you ever think that was in the prescriptive easement? I'm sorry, Your Honor, I confused the facts for you. Let me see if I can clear them up, okay? Where the pipeline was originally laid in 1960, nobody knows if that was actually laid on the easement or off the easement. It was repaired in 1994, and some of that pipeline was laid right beside, some was laid a few feet apart. We thought that one of two things, either where it was laid in 1960 was accurate, and so by laying it right next door we had an easement. Probably didn't because it looked like we were off the easement maybe as early as 1960. If not, we thought where the pipeline laid, the .56 acres, we would have a prescriptive easement because of the length of time between repairing the pipeline and bringing in a lawsuit, okay? Now, what we did, though, Your Honor, is before we ever tried to get into this was we tried to settle the case early on, before we ever brought the first lawsuit. First lawsuit came. We didn't think we had a compulsory counterclaim on condemnation because of the mere fact that it wasn't mature. We thought we could win on easement or prescriptive easement. If we won on either one of those, we'd never get to the condemnation action. The second thing they'd bring was that we had somehow taken contradiction. Is that a test for whether or not a counterclaim is compulsory? So whether or not you win on the first trial, the counterclaim becomes unnecessary? No, Your Honor. The test is whether or not it's mature at the time of filing your pleadings. It wasn't mature at the time we filed our pleadings because of the fact that we thought we had an easement or we had prescriptive easement. So if we would have filed a compulsory counterclaim at that time and we would have tried to proceed, they would have said, Whoa, stop. We don't know yet. So that's the measure. It's time you file your first plea. Was this a decision that the trial judge made as to how he wanted to handle the case? No, Your Honor. I don't think it was a judge. It was our decision. What we did was we decided to proceed this way. We told the court, though, that if they sought the remedy of ejectment, that if we lost, we would bring a condemnation action. We made that very clear from the very beginning. On contrary positions, we didn't take the contrary position because we thought if we had an easement or prescriptive easement and we won that, we don't need condemnation. Only until after the jury came back and then they decided to elect the remedy of ejectment as opposed to compensation, that's when we went with condemnation. That's not contradictory. That just flows. It wasn't a taking for a private purpose because what we did, Your Honors, is under the National Gas Act, when we have the Certificate of Necessity and Convenience, it's deemed to be for the public good. The only business here is running gas for the public consumption, and that's what we're doing with this pipeline. So there was no private taking. It was for a public purpose. Last but not least, they talked about it being excessive. We took 0.56 acres on a hillside that's about this deep in the summertime, in grass, with cattle that's buried underground. We only took that amount of property we needed for the condemnation action of what the jury found to be outside the easement. We offered them, it was appraised for $800. We offered them well in excess of that to settle the case. The jury came back with $5,000. And again, the amount of money we offered to settle the case and buy the easement from them was well in excess of even the $5,000. We did everything we could, Your Honors, to avoid this. Do we know that number? Don't we know that number or not? What we offered? Yeah. Yeah, I believe it's in the briefs. It is in the briefs, Your Honor. Why don't you say it? Well, it's $20,000. Okay. I don't know why you're dancing around. Okay. Anyway, Your Honors, we feel for all those reasons you should uphold what the circuit judge did. What is going on? I'm just asking from your view what's going on. Landowners, I can certainly understand, they just don't want you messing with them? In this situation, Your Honor. What do you think it is? I'm not saying anybody's unreasonable. I know I wouldn't want people messing with my property. Is that what it is? Have you all been harsh with them or rude to them or mean to them? There was a dispute with a sister company over the placement of a well pad on another piece of another parcel, which I think is what led to this whole dispute. They're just tired of bigger companies coming in there and messing with the property and taking pieces of their property. Can't talk to them reasonably, they think. And then the next thing they know, they try legal remedies, they win. And the next thing they know, the company's using the government to take from them what they don't think they ought to have given you. Is that sort of what's going on? I don't think that's correct, Your Honor. I think that we've tried reasonably to settle this matter every step of the way. I mean, the appraised value... You're not saying they're hard feelings. They are hard feelings, that is correct. There's no doubt about that. Okay, thank you, Mr. Hendrickson. Thank you.  Half acre of commercial property in downtown Richmond is worth more than $5,000. Half acre of commercial property in downtown Charleston, West Virginia is worth more than $5,000. This commercial property, they have pipeline, they're transporting gas, they charge for it, they make a lot of money doing it. If they don't have the right to condemn and take, they are at a disadvantage. I agree 100%. They are playing fast and loose with the Natural Gas Act and with FERC. This company did what they wanted to maintain their line without telling my clients, without getting permission, and they were caught. They were caught trespassing. They don't have a justification for relocating the line. There's no reason they couldn't put it back in the same ditch other than it would have taken longer, we couldn't have shipped as much gas, it would have been harder. That's not an excuse. That doesn't give them a new certificate of convenience and necessity or a reason to amend the old one. Same line, same size, same right-of-way, same purpose, but by moving it, they clearly trespassed. They clearly violated the right-of-way easement. Under West Virginia law, statutory law, we have a right to eject. In my view, ejectment is the easiest remedy. I don't have to argue about what the damages are, what the monetary amount is. So the gas company then faces a choice. Suffer ejectment, move the line. What's that cost? Or pay to avoid that. And so that's how I value the case. I don't value the case of $5,000, what somebody said a half acre on the top of the hill in a pasture is worth. I value the case from the standpoint of what will Equitrans, what ought they pay to avoid ejectment, a remedy we're lawfully entitled to, because they don't have an excuse. They don't have a justification. And the Natural Gas Act doesn't provide one for the relocation of the line. Mr. and Mrs. Moore farm the property. They run cattle on it. EQT, a sister company, put a well pad on the joint property, and the surface water ran off of that well pad into the pasture. It upset Mr. Moore. That's how it got broken. You know what? This is evidence of the first trial. You know what EQT told them? We have a right to do what we're doing, and we're going to do it, and if you want to change it, get a lawyer. Well, guess what? They got me. We won the case below. They're trespassing. They breached their right-of-way agreement. They don't have a legal justification for the relocation of their line. They need to move it back on the right-of-way. That's all we're asking for. If they don't want to move it, sit down and negotiate. Don't say, well, we're trying to acquire another easement, and you want an outrageous number. That rationale only applies if there's some meat behind this argument that they can subsequently condemn and move the pipeline wherever they want to. That can't be how the Natural Gas Act is construed. That puts too much power in the hands of the gas company to treat landowners for whatever way best suits them. Well, we'd rather have the right-of-way closer to the road because it's easier to get to, so we're going to relocate the pipeline off the top of the ridge down to the road. You'd have a flood of cases. There'd be a flood of cases if that were the law. If the court doesn't have any more questions, I don't have any other presentations. Thank you. Thank you. All right. Judge Shedd and Judge Floyd will come down and greet counsel. I have a bad cold. I don't want to give it to you guys, so somebody else step here. Okay.
judges: William B. Traxler Jr., Dennis W. Shedd, Henry F. Floyd